JUDGE DER-YEGHIAYAN

MAGISTRATE JUDGE KEYS

BR

# AMERICAN ESCROW, L.L.C.
## REAL ESTATE TAX AND/OR INSURANCE ESCROW ACCOUNT AGREEMENT
### Terms & Conditions

IN CONSIDERATION OF mutual covenants and agreements contained herein and for other good and valuable consideration, it is mutually agreed by and between American Escrow, L.L.C., an Illinois limited liability company American and/or its assigns, and the Client(s) whose name(s) appear(s) on page one of this Agreement Client (s) as follows:

American establishes tax and insurance escrow accounts on behalf of clients. This program establishes an efficient escrow account for taxes and insurance payments based on information contained on page one of this Agreement and supplied by the Client.

1. American will cause an Electronic Funds Transfer EFT or Draft in the amount specified on page one of this Agreement, unless modified in writing by Client, from the Client's designated bank account into an FDIC insured account on behalf of Client. The automatic withdrawal of funds will start on either the fifteenth of the month and will continue every month thereafter until either of the following occur:
   a. Client sells or transfers title to the subject property.
   b. Termination of this Agreement as provided in this Agreement.

Client is simultaneously executing an automatic transfer authorization made part of this Agreement for the purposes of EFT. Should Client's bank account fail to contain sufficient funds at the time of transfer as necessary for adequate Automated Clearing House (ACH) debits, Client authorizes American to double debit the designated account to correct the collection deficiency.

3. The enrollment fee pursuant to this Agreement is non-refundable, except as provide in paragraph 6 below under a Right to Rescind.

4. A non-refundable service fee of Five Dollars ($5.00) will be deducted from the clients escrow account at the beginning of each month that the account is active, regardless if payment is made that month. A Twenty-Five Dollar ($25.00) fee will be charged for any returned check or NSF in a checking account. A One Hundred Fifty Dollar ($150.00) termination fee shall be charged. American reserves the right to increase the monthly service fee from time to time, in its sole discretion, to reflect increases in the Consumer Price Index. Such increase in the monthly service fee shall be binding upon Client after thirty (30) days prior written notice of such increase has been given to Client from American. As used herein, Consumer Price Index means the Consumer Price Index for urban wage earners and clerical workers, all items, Chicago, Illinois (1990 = 100), published by the Bureau of Labor. If, prior to the end of the term of this Agreement, publication of the Consumer Price Index is discontinued or if no basis or time period is so changed that such index is no longer fairly representative of changes in consumer prices from those at the commencement of the term of this Agreement, determination of any increase in the monthly service fee shall be made by American in accordance with such other index as will fairly reflect those changes. Such substitute index will be selected or constructed by American.

5. Should the property be sold or refinanced prior to retirement in full of the subject loan, Client may, at Client's option, establish a new monthly escrow program for Client's new property or new loan without and additional setup charge upon notification in writing of such intent.

6. Right to Terminate. Client may terminate this Agreement at any time and for any reason upon fifteen (15) days prior written notice to American. American may terminate this Agreement at its option with a fifteen (15) day notice or effective immediately should any of the following occur: (a) Client's bank account fails to contain sufficient funds at the time of automatic transfer on three (3) or more occasions; (b) Client's bank account has been closed; (c) Client fails to make monthly payments on coupons for three consecutive months. American will provide Client and the Lender servicing the mortgage with a Notice of Termination within fifteen (15) calendar days of such termination. Furthermore, if this agreement is terminated with a delinquent tax bill because of non-sufficient funds the remaining balance of the account will be forwarded to the lender holding the first lien position payable to the municipality.

7. If either party terminates the herein-stated program, Client may apply for reinstatement by sending a written request for reinstatement to American. At the sole discretion of American, Client may be reinstated at no additional charge if said reinstatement is requested within sixty (60) days of cancellation or when client becomes current on all tax/insurance payments

8. American warrants that it will cause Client's tax and/or insurance payments to be made on subject property regularly and faithfully pursuant to the terms and conditions of this Agreement provided no changes or postponements have occurred.

9. American makes no warranties, either express or implied, except as specifically provided in the above paragraphs, as to any matter whatsoever, including but not limited to, any warranty of merchantability or fitness for a particular purpose.

10. Client acknowledges that all of the information contained in this Agreement has been reviewed for accuracy by Client and certifies further that it is correct. Client will notify American in writing within five (5) calendar days of any change that would affect payments of contracted accounts. Such changes include, but are not limited to (i) increases or decreases in real estate tax or insurance premium amounts, or (ii) change of bank account. American requires thirty (30)

days to effect such changes. All changes must be sent to the below stated address by Client. Future and/or further changes must be in writing and signed by all participants in program as evidenced by the signature of parties appearing in the current Agreement for enrollment purposes. Client shall provide all information upon which American calculates the escrow payments (i.e. real estate tax statements, insurance billing information, etc.) to be achieved during the life of the subject Agreement and Client assumes full responsibility for accuracy of such information. Client shall hold American harmless and indemnify it from any and all liability which may arise as a result of any inaccuracy of any information supplied by Client or failure by Client to promptly notify American of any changes as before stated. Furthermore, Client warrants that all past fee in title of the subject property are represented herein and have signed this Agreement.

11. Client further acknowledges that this Agreement does not diminish or release Client from any obligations under Clients mortgage contract, real estate tax requirement or insurance requirements and agrees to hold harmless American for any late fees, penalties or any other assessments which might be incurred as a result of any event or circumstance that fall outside the control of American. Client further acknowledges that the interest earned, if any, on the escrowed funds will not be paid to Client.

12. Funds withdrawn from Client's account are electronically transferred via the Federal Reserve System's Automated Clearing House (ACH) or by bank draft into an account on behalf of Client. The account into which funds are transferred is protected under U.S. Federal Reserve Regulation "E" and by insurance from the Federal Deposit Insurance Corporation (FDIC). Should funds be withdrawn from Clients accounts in error, Client is entitled to immediate reimbursement under Regulation "E" of the U.S. Federal Reserve. Federal Banking laws and Federal Reserve regulations govern all transactions and insure protection of Client funds. In order to maintain the highest level of Client funds security, American reserves the right to transfer this program to another FDIC insured bank should the current bank's financial integrity be compromised at any time or if it is deemed appropriate to protect the financial interests of our clients.

13. If for any reason any party terminates this Agreement, all funds then being held on behalf of Client shall be repaid to Client less the termination fee of One Hundred Fifty Dollars ($150.00). Repayment requests for funds made by the 20th day of any given month will be paid by the 10th of the following month. No Client funds will ever be retained by American except for service fees already earned and/or any reimbursements of funds paid by American for benefit of Client. Client will remain fully liable for any disbursements made on behalf of Client by American for the intended purposes described in this Agreement.

14. All notices required or permitted under this Agreement will be in writing and will be personally delivered or sent by U.S. Mail or the equivalent, postage prepaid to the appropriate party at the address specified above or to such other address as either party may designate to the other from time to time pursuant to this paragraph. Such notices will be understood to have been given five (5) days after the mailing thereof.

15. The laws of the State of Illinois shall govern this Agreement and the parties rights so assigned. Any action against American must be filed in Cook County, Illinois. Client waives all venue challenge privileges.

16. This Agreement constitutes the entire Agreement between the parties hereto and may be amended in whole or in part only by mutual agreement of the parties. All changes requested by Client must be in writing and signed by the authorized parties.

17. In any action brought to bear to enforce or interpret any provision of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees. However, Client hereby agrees that any claim against American or any of its affiliates shall be limited to documented losses actually incurred.

18. Client will be contacted if any adjustments or corrections to this Agreement occur. Such changes will become effective unless otherwise notified by Client in writing.

19. Any provision of this Agreement that is judicially deemed to be invalid in whole or in part shall not affect the enforceability of those provisions found not to be invalid.

20. American represents that all sales representatives will be limited to the sale and servicing of escrow accounts.

21. No sales representative of American is authorized to make any representation or agreement in addition to or contrary to those contained in this Agreement, the authorized printed explanatory literature and Client benefits summary provided by American. Client hereby acknowledges that no such representations or promises have been made or, if any have been made, Client has not relied on them in entering into this Agreement.

All correspondence should be addressed to:

American Escrow, L.L.C.
404 May Street
Chicago, Illinois 60822

GUARDTERMS & COND.DOC

**EXHIBIT**

A