aEE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEREMY HAWKS, DAWN HAWKS, JENNIFER SIKO, and RODNEY WEST, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN ESCROW, LLC, DEREK LURIE, and STEVEN LURIE,<br><br>Defendants.<br>-----------------------------<br>AMERICAN ESCROW, LLC,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>WESTCHESTER FIRE INSURANCE COMPANY and ALEXANDER J. WAYNE & ASSOCIATES, INC.,<br><br>Third Party Defendants. | Case No. 09 C 2225<br><br>Magistrate Judge Arlander Keys |

**MEMORANDUM OPINION AND ORDER**

On April 10, 2009, plaintiffs filed a putative class action complaint against American Escrow, LLC and its principals, Derek and Steven Lurie, for breach of contract and negligence. The complaint alleges, on behalf of all customers who paid escrow funds to American Escrow to satisfy property taxes and/or insurance obligations, that American Escrow contracted with plaintiffs to provide escrow services, that it collected money from plaintiffs, but failed to deliver or otherwise pay the

insurance and taxes. On June 29, 2009, the plaintiffs filed an amended complaint, adding two claims against Derek and Steven Lurie: a conversion claim and a claim alleging violation of the Illinois Consumer Fraud and Deceptive Practices Act; in the amended complaint, the breach of contract and negligence claims were asserted against American Escrow only. The parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to this Court on May 3, 2010.

After the plaintiffs filed suit, American Escrow sent notice of the claims to Westchester Fire Insurance Co., which had issued a professional liability policy to it. In response, on May 26, 2009, Westchester wrote to American Escrow, advising that it was denying coverage for the Hawks claims. In particular, Westchester advised that "the Policy precludes coverage for any Claim alleging based upon or arising out of attributable to the commingling or improper use of funds or accounts or failure to properly segregate or safeguard funds. As the allegations in the Hawks Claim arise from allegations of improper use of and failure to properly safeguard funds by American Escrow, there is no coverage for this matter under the Policy." See Third Party Complaint, Exhibit C. Westchester advised in that same letter that it would not be assigning defense counsel to defend the matter. Id.

On May 25, 2011, almost two years to the day after

Westchester denied coverage, American Escrow filed a Third Party Complaint against Westchester and Alexander J. Wayne & Associates, Inc., seeking declaratory relief and damages. In its complaint, American Escrow alleged that Westchester sold American Escrow a primary "Miscellaneous Professional Liability Policy" with a policy period of October 31, 2008 to October 31, 2009 and that the policy included "broad defense and indemnity coverage" against claims made and reported during the policy period, including claims made for negligent acts and omissions committed in American Escrow's performance of professional services. Third Party Complaint, ¶20. American Escrow alleges that it provided timely notice of the plaintiffs' claims, but that Westchester denied coverage, despite its obligation to defend against the plaintiffs' claims and despite the fact that the claims clearly fell within the policy's parameters.

Westchester has now filed a motion to dismiss American Escrow's third party complaint under Rule 12(b)(6) for failure to state a claim for which relief may be granted. In support of its motion, Westchester argues that the claims asserted by the plaintiffs are excluded from coverage under the policy Westchester issued to American Escrow. The Third-Party Complaint against Third-Party Defendant Alexander J. Wayne & Associates, Inc. has been stayed pending the resolution of Westchester's Motion to Dismiss.

**Discussion**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted; it should be granted only if it appears beyond all doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *E.g., Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss under 12(b)(6), the Court accepts as true all well pleaded facts alleged in the complaint and it draws all reasonable inferences from those facts in favor of the non-moving party (in this case, American Escrow). *See, e.g., Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). The Court does not ask whether American Escrow will ultimately prevail; rather, it asks whether it is entitled to offer evidence to support its claims against Westchester. *E.g., Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327 (7th Cir. 1999).

Westchester argues that the claims asserted by the plaintiffs are specifically excluded from coverage. Thus, Westchester argues, it had no duty to defend and its failure to defend did not constitute a breach of contract. Whether Westchester is right depends upon the language of the policy. The parties agree that Illinois law governs the interpretation of the insurance policy in dispute. "Like any contract, an insurance

policy is construed according to the plain and ordinary meaning of its unambiguous terms." *Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322, 324 (7th Cir. 2010) (citing *Nicor, Inc. v. Associated Elec. & Gas*, 860 N.E.2d 280, 286 (Ill. 2006)). Ambiguity exists only where a term is susceptible to more than one reasonable interpretation. *Id.* (citing *Nicor*, 860 N.E.2d at 286). "Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy." *Clarendon National Insurance Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011)(citing *Hobbs v. Hartford Insurance Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)). "In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Villicana*, 692 N.E.2d 1196, 1199 (Ill. 1998)). "If the policy language is unambiguous, courts apply it as written." *Id.* (citing *Hobbs*, 823 N.E.2d at 564). "Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation." *Id.* (citing Hobbs, 823 N.E.2d at 564; *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007)).

The plaintiffs' complaint asserts two claims against American Escrow – a breach of contract claim and a negligence

5

claim. For both claims, the plaintiffs purport to bring the lawsuit on behalf of "all customers who paid escrow funds to Defendant American Escrow, L.L.C. to satisfy property taxes and/or insurance obligations but whose escrow funds were not delivered or otherwise paid to the intended taxing authority and/or insurance provider or returned to the customers from January 1, 2008 to the present day." Amended Class Action Complaint, ¶1. For their breach of contract claim, the plaintiffs allege that they each had a contractual relationship with American Escrow, pursuant to which "American Escrow agreed to collect, hold, and use Plaintiffs' monthly payments to satisfy Plaintiffs' property tax and insurance bills, and that, despite that contractual obligation, American Escrow "failed to pay Plaintiffs' property taxes and insurance beginning some time in 2008 and continuing until at least March 2009." *Id.*, ¶¶26-28. The plaintiffs further allege that American Escrow promised to return, upon termination, all funds then being held on behalf of its clients"; yet, the plaintiffs allege, American Escrow failed to keep that promise. *Id.*, ¶¶29-30.

For their negligence claim, the plaintiffs allege that they "entrusted American Escrow to collect and oversee their escrow accounts"; that American Escrow owed them "a duty of care in overseeing and distributing their accounts"; and that "American Escrow negligently failed to pay Plaintiffs' property taxes and

insurance beginning some time in 2008 and continuing until at least March 2009." *Id.*, ¶¶35-36. The plaintiffs also alleged that, when American Escrow shut its doors, it negligently failed to return the money the plaintiffs had paid into their escrow accounts. *Id.*, ¶37.

Westchester argues that these claims are expressly excluded under the policy. The policy in question was issued by Westchester to American Escrow, American Tax Reporting and Woodland Technologies, for a period running from October 31, 2008 to October 31, 2009, but effective retroactively in the case of American Escrow to October 2, 1998. The policy – dubbed a "Miscellaneous Professional Liability Policy" – is a claims made policy; it requires Westchester to "pay on behalf of the Insured all sums in excess of the Retention that the Insured shall become legally obligated to pay as Damages and Claims Expenses because of a Claim first made against the Insured and reported to the Company during the Policy Period by reason of a Wrongful Act committed on or subsequent to the Retroactive Date and before the end of the Policy Period." Policy No. G2404502A 001, §I(A)(attached as Exhibit B to American Escrow's Third Party Complaint). The policy includes a defense provision, which imposes upon Westchester a duty "to defend any covered Claim brought against the Insured even if the Claim is groundless, false or fraudulent." Policy, §I(B)(1)(attached as Exhibit B to

American Escrow's Third Party Complaint).

The policy also includes a number of exclusions. Most relevant for purposes of resolving the present motion, the policy provides that the Company shall not be liable for damages or Claims Expenses on account of any Claim "alleging, based upon, arising out of, or attributable to:

1. the commingling or improper use of funds or accounts,

2. sums received by any Insured or credited to any Insured's account, or

3. fees, premium, taxes, claims, commissions or brokerage monies . . . .

Policy No. G2404502A 001, Endorsement entitled "Title Agents, Title Abstractors, Escrow Agents (attached as Exhibit B to American Escrow's Third Party Complaint). The policy also excludes from coverage any Claim "alleging, based upon, arising out of, or attributable to the commingling or improper use of, or failure to properly segregate or safeguard funds."

Based upon the Court's reading of the complaint and the policy language, Westchester is right: the claims, as alleged, are expressly excluded under the policy. There is nothing ambiguous about the exclusions; they are clear on their face. And the allegations are predicated on sums received by American Escrow and on the improper use of those funds, as well as the failure to properly safeguard those funds. The plaintiffs allege

that American Escrow breached its duty with respect to money deposited with it on behalf of its clients; these allegations fall squarely within the broad exclusions quoted above. The fact that the plaintiffs may not have used that exact language does not mean that the allegations fall outside the scope of the exclusions. In substance, the claims fall within the exclusions; the Court can envision no set of facts consistent with the plaintiffs' allegations that would fall within the policy's coverage and, certainly, the plaintiffs have not argued the point. American Escrow argues that the plaintiffs' claims fall outside the exclusion because they allege issues with how money was *paid* (or not paid), not about how money was collected. The Court respectfully rejects this argument; if American Escrow had not collected the money, the plaintiffs would have no case. The plaintiffs' claims clearly arise out of sums received by American Escrow and out of the improper use and failure to safeguard those funds.

American Escrow argues that it is an escrow agent, and that reading the exclusions to deny coverage for any escrow services renders the policy meaningless; this interpretation would mean that American Escrow essentially paid Westchester for nothing – for a professional liability policy that excluded from coverage any potential professional liability claim. American Escrow argues that this interpretation must not be what the parties

9

intended because, if given the meaning urged by Westchester, the insurance coverage was illusory; American Escrow was an escrow agent that provided escrow services and if it obtained a professional liability insurance policy that excluded from coverage any and all claims relating to escrow services, it, in fact, had no professional liability insurance coverage at all – amounting to a windfall to Westchester. But, according to the policy and supporting documentation, American Escrow's view is overly simplistic. First, the policy covered three insureds – American Escrow, as well as American Tax Reporting and Woodland Technologies. Thus, it was not just concerned with the professional services provided by American Escrow.

Additionally, the professional services contemplated by the policy went beyond simply the collection of money. The policy covered wrongful acts stemming from professional services, which were defined to include Escrow services consisting of the processing of escrow instructions and loan documents; supervision of document execution; preparation of buyer's and seller's closing statements; distribution of escrow proceedings; closing of real estate transactions; and verification of payment of state, municipal, and local real estate and personal property taxes for others" and to exclude the following services: accountant, actuary, architect, banker, builder, construction manager, contractor, doctor, engineer, franchisor, hardware

manufacturer/distributor, insurance agent, insurance company, internet service provider, investment banker, investment advisor, lawyer, mortgage banker/broker, nurse, physician, property developer, security broker/dealer, software programmer, structured settlement broker, web site designer, or web site host services." From this it appears that receiving money for the payment of taxes and escrow payments was not the entire universe of services provided by the insureds. The Court, therefore, finds that the policy's exclusions are clear and unambiguous, and that the allegations asserted by the plaintiffs are excluded from coverage pursuant to the plain language of the policy.

This finding also resolves the question of whether Westchester had a duty to defend. In determining whether an insurer has a duty to defend, the Court begins with the relevant policy provisions and compares them to the allegations of the underlying complaint. *E.g., Shriver Insurance Agency v. Utica Mutual Insurance Company*, 750 N.E.2d 1253, 1256 (Ill. Ct. App. 2001)(citing *Country Mutual Insurance Co. V. Hagan*, 698 N.E.2d 271 (Ill. Ct. App. 1998)). In this context, the Court must "liberally construe both the insurance policy and the underlying complaint in favor of the insured." *Id.* But an insurer has a duty to defend only if the complaint alleges facts within – or potentially within – the policy coverage. *Id.* (citing *Indiana Insurance Co. v. Hydra Corp.*, 615 N.E.2d 70 (1993)). The

plaintiffs' allegations do not fall within – or even potentially within – the policy coverage. Accordingly, Westchester had no duty to defend, and American Escrow can prove no set of facts to show that it did.

## Conclusion

For the reasons set forth above, Westchester's Motion to Dismiss American Escrow's Third-Party Complaint [#81] is granted.

Date: March 16, 2012

E N T E R E D:

_____
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT